## JAMES R. POTTER AND OTHERS v. AVERY PETTIS.

Vessels have a right to use a warp in getting in and out of the harbor of a navigable river, and to extend the warp across the entire channel; but on the approach of another vessel, it is the duty of the vessel using the warp to take notice of such approach, and so to lower the warp as to give a free passage through the ordinary travelled part of the channel, and to indicate to the approaching vessel the point intended for her passage. The approaching party is not bound to pass at the point indicated, but may pass at a different point if he honestly thinks it can be done without interference, but in such case he will be liable for the damage which ensues, unless he can prove that he disregarded the notice of the other vessel in the bona fide belief that he could so pass without damage to it, and the burthen of proving this will be upon him.

THIS was an action of trespass tried at the Court of Common Pleas, before STAPLES J., from which it came up on exceptions to the rulings of the Court. The plaintiffs are owners of the schooner Anna Jenkins. The crew of

the schooner were engaged in getting her out of the harbor at Providence, and for this purpose were warping her off from the wharf on the east side of the river by a line about one hundred fathoms in length, one end of which was fastened to a dolphin on the western verge of the channel and the other to a winch in the schooner, upon which the crew were heaving. The defendant came up the channel of the river, unperceived by the men in the schooner, in an oyster boat of about three tons burthen, loaded with oysters, and without giving notice of its approach, passed the line about thirty feet from the schooner's bows, and parted it, the line when drawn up presenting the appearance of having been cut by a sharp instrument. The line had been slackened a few minutes before the passage of the defendant's boat to allow the passing of two sloops, and was at the time so slack that the defendant's boat might have passed nearer the centre of it without obstruction. It also appeared that the water at the dolphin was about seven feet deep, and that the defendant's boat could have safely passed to the west of it ; or might have passed to the east of the schooner, between it and the wharf, the schooner being about thirty feet distant from the wharf. The evidence also showed that the dolphin was placed in the harbor by the authority of the United States, to be used in warping off vessels, and was used for that purpose. The Court charged the jury that the river was a public highway, and as such every person had an equal right to use it ; that if the defendant, being engaged in lawfully passing up the river, parted the plaintiff's warp by his boat running against it, and without proof of his express intention to part it, trespass would not lie for the cut ; and so, if the defendant parted it when his boat was afoul of it by pushing it down with a shovel

or like instrument, the intent being to get his boat over it, and not to part the warp ; that vessels warping in and out have the undoubted right to stretch their warps across the channel, if they do not interfere with the free passage of others ; but when another approaches, he who stretches out such impediment is bound to let go, and the approaching party is not bound to give, but the other must take, notice of his approach ; that if the defendant, in running up the river in the place usually travelled by his and similar boats, was entangled with a warp stretched across the entire channel, he had a right to free himself and remove the nuisance, although in some part of the channel the warp was so far beneath the surface as not to interfere with the passing of his boat had he attempted it at that place, he not being bound to take an unusual course or to pass to the west of the dolphin ; but if the defendant cut the line without such justification, the plaintiffs were entitled to a verdict for the damages. The jury found for the defendant, and the plaintiffs now moved for a new trial upon exceptions to the charge.

*Jenckes* and *Hayes* for the plaintiff contended. The plaintiff and defendant had each an equal right to the river as a navigable highway, and when one was in the lawful use of it, the other should have yielded. The plaintiffs were using the entire channel, but not in such a way as to obstruct the passage, and having so lowered their warps that vessels might pass, it was the duty of the defendant to pass at the point where it was lowered, as did the sloops, otherwise they would be obliged to lower at every point, which would be a virtual abandonment of their right to warp out. The rights of the parties are not those of absolute enjoyment, as with private pro-

perty, but of common employment, in which a lawful use by one excludes the right to use by the other. A team may back across the street, in loading or unloading, and passers by must leave the middle of the street and pass around on the one side or the other, and, for the time, unless unreasonably prolonged, the occupation is lawful. It is the same with the river ; so long as the defendant could have passed either over the centre of the warp or around the dolphin or between the vessel and the wharf, he had no right to pass in such a way as to interfere with the plaintiff's use of the river. It is an error to suppose the defendant had any special right to the channel ; the whole river is a navigable highway and each person using it should so accommodate himself to the other, that all may use it, where it can be reasonably done, according to their several requirements. The defendant's boat was completely under his control, and he might so select his passage as not to interfere with plaintiff, whereas, if the plaintiff is bound to lower his warp through its whole extent, he must lose control of his vessel, and be unreasonably delayed in getting out. The charge was wrong also in requiring notice from the plaintiff, the rope being apparent and indicating of itself the point, where it might be safely passed.

*Rivers* for the defendant contended. That the defendant's boat being in the ordinary travelled channel of the river, and having become unintentionally entangled, he was not liable for any damage occasioned by the parting of the warp.

The opinion of the Court was delivered by

Greene, C. J. The river is a navigable highway, in

which all have an equal right.   The defendant's oyster boat and the plaintiff's schooner are equal in this respect.

Vessels have a right to use a warp in getting in or out of the harbor, but this must be done in a way not to interfere with the rights of other vessels to the free navigation of the river.

The plaintiffs have a right to extend their warp across the entire channel of the river, if there were no vessels passing, but on the approach of another vessel it was their duty to take notice of such approach, and to lower their warp so as to give ample space in the ordinary travelled part of the channel for her to pass, and to give timely notice of the space so left.   They were not bound to slacken their warp so as to leave the entire channel free.   The vessel approaching, on the receipt of such notice, ought to take her course in the part of the channel indicated by the notice.   We do not mean to say the approaching vessel is bound, absolutely bound, to take such course.   For if, on the receipt of such notice, she takes her course in a part of the channel other than that indicated by the notice, and this is done in the belief, on the part of those in command, that there is depth of water over the warp sufficient to pass in the course taken, and an honest though mistaken judgment is exercised in the matter, without any design or intention of interfering with the warp, the approaching vessel would not be liable, should she under such circumstances get entangled in the warp, and, in order to free herself from it, cut it, this being necessary for that purpose, and not done willfully or recklessly.   But when the approaching vessel disregards the notice, and takes her course in a part of the channel different from that indicated by it, the burthen of proving this is done in good faith, on the part of those in command, will be upon the approaching vessel.

The *prima facie* presumption, under such circumstances, is, that the disregard of the notice was reckless or wilful; and in either case the approaching vessel would be liable for any interference with the warp or injury to it.

The burthen of proving the warp was slackened and timely notice given is on the vessel which uses the warp. But if no notice is given the approaching vessel, and those in command do not know of the space left, she is at liberty to take any course in the channel, and is not liable for interference with the warp under such circumstances, although in fact ample space was left her to pass in some portion of the ordinary travelled part of the channel.

Finding an obstruction extending across the channel, and knowing of no provision to pass without interfering with it, she would be justified in taking such course as those in command thought proper.

Whether, therefore, the charge of the Court of Common Pleas was correct or not, depends upon what the evidence was as to the fact of the rope being slackened and timely notice given, or knowledge of the fact by the defendant otherwise.

If the defendant had not notice or knowledge of the fact, the charge was correct; and after a careful examination of the testimony, a majority of the Court think there is not such evidence of the fact, as called on the Court to state the law to the jury applicable to such a state of the case.

The evidence negatives any notice being given from the schooner; those on board did not know of the approach of the defendant's boat until the line was cut.

*New trial denied.*